UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| ANITA S. COLE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.: 3:02-CV-725 |
| | ) | (VARLAN/GUYTON) |
| JOHN E. POTTER, POSTMASTER | ) | |
| GENERAL, UNITED STATES POSTAL | ) | |
| SERVICE, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This employment discrimination case is before the Court on the defendant United States Postal Service's Motion for Summary Judgment [Doc. 49]. The Court previously ruled on a motion to dismiss or, alternatively, motion for judgment on the pleadings in which all of plaintiff's claims were dismissed with prejudice except for plaintiff's retaliation claim [Doc. 48]. It is worth noting that the Court's prior opinion [Doc. 47], which is incorporated herein, did not address the merits of plaintiff's retaliation claim, but only whether plaintiff had exhausted her administrative remedies as to that claim. The defendant's motion for summary judgment now addresses the merits of plaintiff's retaliation claim.

The Court has carefully considered the pending motion along with briefs and supporting documents filed by both parties [Docs. 50, 51, 52, 53, 55]. For the reasons set forth herein, the defendant's motion for summary judgment will be granted and this case will be dismissed with prejudice.

**I.    Relevant Facts**

The Court will not restate all of the facts in this case, but will summarize only those facts relevant to the instant motion.

On June 21, 1997, plaintiff first contacted an EEO counselor regarding allegations of discrimination on the basis of sex (female), religion (Christian minister), national origin (American Indian), and disability. She complained of events occurring from May 15, 1996 to July 12, 1997, primarily related to her previous removal from employment and the denial of unspecified rights under the FMLA. This led to the filing of her first formal administrative EEO complaint, case number 1H-378-0028-97, on September 4, 1997.

On June 24, 1997, three days after she first contacted an EEO counselor, plaintiff faxed a leave request form to the plant manager's office, requesting emergency annual leave ("EAL") from June 24, 1997 to July 7, 1997. Plaintiff did not provide an explanation for the requested emergency leave form. She also called into work on June 24 and requested EAL from Jeff Drinnen, a supervisor. Mr. Drinnen asked plaintiff the nature of the emergency and she only cited "personal reasons." The conversation ended without plaintiff providing any explanation as to the reason for her request.

Plaintiff had previously submitted a May 29, 1997 leave request for the June 30 - July 6 time period. Plaintiff's request had been denied because the defendant had already granted the maximum amount of leave to other employees for those dates. The defendant grants annual leave on a seniority basis.

2

On July 7, 1997, plaintiff and her husband Lloyd Cole, also an employee of the Postal Service, faxed a letter to Dale Reese, the Plant Manager, again requesting emergency leave. The letter states in pertinent part as follows:

> We are requesting continuation of Emergency Leave. MDO Jim Bishop and SDO Jeff Drinnen have acted in a discriminatory and threatening manner toward us. They have created a hostile work environment which makes our employment relationship difficult and ineffective. Jeff Drinnen has repeatedly harassed and discriminated against Anita and has gone as far as forcing her to violate her light-duty work restrictions. ...With an MDO who has that typ of mentality and an SDO who has the lack of character that Jeff Drinnen has and the track record of harassment and discrimination he has demonstrated, we feel that a hostile work environment has been created by Postal Management and we are seeking Injunctive relief as well as other Remedies available under Title VII, EEOC.

[Doc. 49, Ex. C.][1]

Mr. Bishop mailed a letter dated July 14, 1997, to plaintiff and her husband which states as follows:

> This letter is your official notice that I am in receipt of your two faxed messages. The first (3791 requesting EAL - Code 22 from June 24 to July 7) was received after normal business hours on June 24, 1997. No further contact until the second faxed message (requesting a continuation of Emergency Annual Leave) was received on July 7, 1997. No further contact from you since that date. Supervisor Jeff Drinnen, your immediate supervisor, has received no word from you since the beginning of your absence.
> Please be advised that your request for leave is not approved, therefore your absence (June 24 to date) is being considered *Absence Without Official Leave* "AWOL."

[Doc. 49, Ex. D.]

---

[1] "MDO" stands for "Manager, Distribution Operations" and "SDO" stands for "Supervisor, Distribution Operations."

3

On July 31, 1997, plaintiff was notified by letter of an investigative interview scheduled for August 8, 1997. The letter from Mr. Drinnen states in pertinent part as follows:

> This is official notice that I intend to hold an investigative interview with you on Friday, August 8, 1997. This interview is to begin at your normal reporting time. This interview will concern your continued refusal to report for work.
>
> Your attendance at this interview is voluntary on your part. However, you should understand that this is your opportunity for input and presentation of any documentation you wish for me to consider prior making [sic] a decision concerning what discipline, if any, I need to take concerning your continued absence from duty.

[Doc. 49, Ex. E.]

On August 7, 1997, one day prior to the scheduled interview, plaintiff and her husband faxed another letter to Plant Manager Reese. This letter stated in pertinent part:

> This letter is in response to a request by SDO Bell and SDO Drinnen to meet with Anita Cole, my wife and myself. Please be advised that we are not "refusing to work." As we have all [sic] ready stated in previous communication, we are seeking Injunctive relief as well as other remidies [sic] under Title IIV of the EEOC. As far as evidence and documentation goes, we have plenty and will be very pleased when it can be placed in front of the proper judicial authorities.
>
> We have not resigned or abandoned our jobs, we would like to work but the continued harassment and discrimination on the part of local management makes the situation one which threatens the well being of our careers and reputation.

[Doc. 49, Ex. F.] Plaintiff did not report for work or the investigative interview on August 8, 1997.

4

Plaintiff did not report to work for a period of 50 days, from June 24, 1997 through August 12, 1997. On August 12, 1997, the Postal Service sent plaintiff a Notice of Removal charging her with AWOL for the 50-day period she was absent from work. The notice provided that plaintiff would be removed "no sooner than 30 days from your receipt of this notice." [Doc. 49, Ex. G.]

The next day, August 13, 1997, plaintiff contacted an EEO counselor regarding the notice of removal she had received. She alleged that she was being removed in retaliation for her previous EEO complaint. Plaintiff's new complaint was assigned case number 1H-378-0035-97. Plaintiff filed a formal administrative EEOC complaint regarding her first EEO claim on September 4, 1997. She was discharged from the Postal Service on September 30, 1997. Plaintiff filed a formal administrative EEO complaint regarding her retaliation claim on October 30, 1997.

**II.     Analysis**

    A.     <u>Standard of Review</u>

Under Fed. R. Civ. P. 56(c), summary judgment is proper if "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The burden of establishing there is no genuine issue of material fact lies upon the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 n.2 (1986). The court must view the facts and all inferences to be drawn therefrom in the light

5

most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 310 F.3d 937, 942 (6th Cir. 2002).  To establish a genuine issue as to the existence of a particular element, the non-moving party must point to evidence in the record upon which a reasonable jury could find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The genuine issue must also be material; that is, it must involve facts that might affect the outcome of the suit under the governing law.  *Id.*

The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper jury question, and not to weigh the evidence, judge the credibility of witnesses, and determine the truth of the matter.  *Id.* at 249.  Thus, "[t]he inquiry performed is the threshold inquiry of determining whether there is the need for trial - whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.* at 250.

B.  Plaintiff's Retaliation Claim

Title VII prohibits retaliation against an employee who "has opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  As with other types of discrimination claims, the analytical framework for retaliation cases involves three stages.  First, the plaintiff must set

6

forth a prima facie case, which gives rise to an inference of discrimination.[2] *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to offer a legitimate, nondiscriminatory reason for the adverse employment action at issue. *Burdine*, 450 U.S. at 253. If the defendant meets this burden, then the burden of production shifts back to the plaintiff to demonstrate that the proffered reason is pretext for discrimination. *Id*.

In order to establish a prima facie case of retaliation, a plaintiff must establish the following elements: (1) that she engaged in protected activity; (2) that the defendant knew of this exercise of her protected rights; (3) that the defendant consequently took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action. *Wade v. Knoxville Util. Bd.*, 259 F.3d 452, 463 (6th Cir. 2001); *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 831 (6th Cir. 1999).

For purposes of summary judgment, defendant does not dispute that plaintiff can establish a prima facie case [*see* Doc. 51 at p. 8]. The burden of production thus shifts to defendant to offer a legitimate, nondiscriminatory reason for plaintiff's discharge. Here,

---

[2]A plaintiff may establish a prima facie case of discrimination either by presenting direct evidence of intentional discrimination by the defendant or by showing the existence of circumstantial evidence which creates an inference of discrimination. *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241, 1246 (6th Cir. 1995). Plaintiff has not alleged, and the record does not reveal, any direct evidence of discrimination, *i.e.*, evidence which proves the existence of a fact without any inferences or presumptions. *Laderach v. U-Haul of Northwestern Ohio*, 207 F.3d 825, 829 (6th Cir. 2000).

defendant terminated plaintiff because she "simply stopped reporting for work." [Doc. 51 at p. 9.] Defendant argues that plaintiff's protected activity does not give her justification to stop working without consequence. *See Brown v. Ralston Purina Co.*, 557 F.2d 570, 572 (6th Cir. 1977) ("an EEOC complaint creates no right on the part of an employee to miss work, fail to perform assigned work, or leave work without notice"). The key issue presented by defendant's motion is whether plaintiff can show that defendant's stated reason was pretext for a retaliatory motive.

A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *Singfield v. Akron Metropolitan Housing Authority,* 389 F.3d 555, 564 (6th Cir. 2004); *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). It appears that plaintiff is relying on the third type of showing of pretext, that is, other employees were not fired for substantially identical conduct. *Manzer*, 29 F.3d at 1084.

Defendant contends that plaintiff's July 7, 1997 letter in which she complains of a "hostile work environment" is insufficient to show that retaliation was the motive for her termination inasmuch as those complaints relate to her initial EEO complaint. Defendant relies heavily on a case from another circuit, *Spratley v. Hampton City Fire Dep't*, 933 F. Supp. 535, 541 (E.D. Va. 1996), *aff'd*, 125 F.3d 848 (4th Cir. 1997), in which the plaintiff's retaliation claim was dismissed because the plaintiff could not show that, but for his EEOC claim, he would not have been fired due to his unauthorized absences from work.

8

Plaintiff argues that although she was not required to provide a reason for requested leave, she requested emergency leave because "[t]he atmosphere at work had become extremely hostile toward the Plaintiff and her husband. So hostile that the Plaintiff and her husband feared that some false accusation would be made against them. The Plaintiff and her husband even feared for their lives." [Doc. 52 at p. 4.] Even assuming a hostile work environment existed, plaintiff was no longer subjected to such conduct once she stopped reporting to work. Moreover, her July 7 letter is simply a continuation of the complaints raised with the EEO counselor on June 21.

Plaintiff asserts that she and her husband were not seeking a paid vacation but rather requesting protection through injunctive relief. [*Id*. at p. 5.] Plaintiff further argues that the defendant knew she was engaged in protected activity and terminated her nonetheless. [*Id*. at p. 7.] Plaintiff asserts that she was removed from her position only four (4) days after the voluntary meeting on August 8, although the record reflects that she received the notice of removal on August 12 and the termination was effective on September 30, over a month later.

Plaintiff argues that she should have been subjected to progressive discipline as set forth in the collective bargaining agreement.[3] [*Id*. at p. 9.] She suggests that the lack of corrective discipline as reflected in the notice of removal is evidence of a retaliatory motive.

---

[3]Section 16.1 of the bargaining agreement states in part that "a basic principle shall be that discipline should be corrective in nature, rather than punitive. No employee may be disciplined or discharged except for just cause such as, but not limited to, insubordination, pilferage, intoxication (drugs or alcohol), incompetence, failure to perform work as requested, violation of the terms of this Agreement, or failure to observe safety rules and regulations." [Doc. 52, Ex. D.]

9

The Postal Service asserts that it complied with the collective bargaining agreement because her "failure to perform work as requested" is an identified cause for termination thus defeating the necessity for the imposition of corrective discipline.

While a fair reading of section 16.1 indicates that "failure to perform work as requested" may be conduct rising to the "just cause" standard for discipline or discharge, it does not appear to require discharge for such offense. Indeed, the provision allows for "discipline[] *or* discharge[]." [Doc. 52, Ex. D (emphasis added).] Further, contrary to plaintiff's argument, the agreement does not appear to mandate progressive discipline prior to discharge for all offenses. The defendant correctly notes that the notice of removal complied with the requirements of section 16.5 which requires the Postal Service to provide 30-days advance written notice of the charges against the employee prior to discharge [*see* Doc. 52, Ex. D]. The Court can find no basis to support plaintiff's argument that the defendant violated the collective bargaining agreement in terminating her employment.

Plaintiff has supplied some documents regarding another Postal Service employee, Robert Lawson, and argues that the defendant "bent over backwards for him" through the use of corrective discipline. Plaintiff also contends that employee James Gray had similar attendance and AWOL issues but he was given corrective discipline. Plaintiff has attached four pages of what purports to be Mr. Gray's attendance records at the Postal Service for the 1997 and 1998 calendar years. [Doc. 52, Ex. G.] She suggests that Mr. Gray was absent, tardy, or AWOL for 629 days in this two year period. Finally, in an attempt to rebut the defendant's reliance on *Spratley*, plaintiff argues that "[i]t is not the misconduct of the

10

Plaintiff but the swift and venomous strike of the retaliating Postal management that caused the Plaintiff to be fired so quickly." [*Id*. at p. 17.]

With respect to employees Lawson and Gray, defendant contends that these individuals are not "similarly situated" with the plaintiff to show disparate treatment. The Postal Service argues that plaintiff and Mr. Lawson had different supervisors and were disciplined for different conduct; that is, plaintiff was terminated for being AWOL and Mr. Lawson was suspended for "irregular and unreliable attendance," "reporting for duty while under the influence of alcohol," and "violation of your last chance/settlement agreement." [Doc. 52, Ex. E.] The defendant contends that plaintiff's conclusions regarding Mr. Gray are based solely on unauthenticated and handwritten documentation [Doc. 52, Ex. G].[4] Defendant further contends that the documents regarding Mr. Gray fail to show whether he was similarly situated to the plaintiff. [Doc. 53.]

A plaintiff may show that an employer's proffered nondiscriminatory explanation is pretext on the grounds that similarly situated employees received disparate treatment for the same conduct. *Weigel v. Baptist Hosp. of East Tennessee*, 302 F.3d 367, 378 (6th Cir. 2002). The employees with whom the plaintiff seeks to compare herself must be similar in all relevant aspects. *Id*.; *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). In other words, the employees must have "engaged in the same conduct without such

---

[4]On the issue of authentication, plaintiff asserts that she received the documents regarding Mr. Lawson and Mr. Gray from the defendant "during the EEOC discovery period." [Doc. 55 at p. 3.]

11

differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Clayton v. Meijer, Inc.*, 281 F.3d 605, 611 (6th Cir. 2002) (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)).

While plaintiff argues passionately in support of her claims, the Court must focus on the facts as established in the record. It is clear that knowledge of an employee's protected activity, without more, is insufficient to establish a retaliatory motive. *Sanchez v. Henderson*, 188 F.3d 740, 747 (7th Cir. 1999), *cert. denied*, 528 U.S. 1173 (2000). Thus, the Court must balance the Postal Service's legitimate, nondiscriminatory reason, plaintiff's failure to report for work for 50 days, with plaintiff's evidence regarding Mr. Lawson and Mr. Gray. Giving the plaintiff the benefit of the doubt that she could authenticate the documents regarding Mr. Lawson and Mr. Gray at trial, the question then is whether these employees are similarly situated to plaintiff in all relevant aspects to show disparate treatment.

The Court assumes for purposes of summary judgment that Mr. Lawson and Mr. Gray are employed in comparable positions with the Postal Service. The document regarding Mr. Lawson is entitled "notice of removal" with the word "removal" scratched out and the word "suspension" handwritten above it. Thus, it appears that Mr. Lawson was suspended for 14 days due to "irregular and unreliable attendance – not being available for duty as scheduled and as needed, including AWOL." [Doc. 52, Ex. E.] The notice reveals that Mr. Lawson was AWOL for .99 hours on one day and that he was absent or tardy on several other days. Thus, while Mr. Lawson may have had attendance issues and received discipline for those

problems, it does not appear that he was absent from work for 50 days, much less that he was AWOL for 50 days. The Court therefore cannot conclude that he and plaintiff are similarly situated in all relevant aspects.

The documents regarding Mr. Gray are analyses of his attendance for the 1997 and 1998 calendar years. [Doc. 52, Ex. G.] Assuming these calendars are accurate, plaintiff correctly states that Mr. Gray was often absent from work during this period of time. However, the majority of his absences are marked for "FMLA," meaning Family Medical Leave Act, "LWOP," meaning leave without pay, or for some form of sick leave. It further appears that Mr. Gray was considered AWOL for two days in October 1997. There is no evidence in the record, however, as to whether Mr. Gray was disciplined for any of his absences. Thus, again, the Court cannot conclude that Mr. Gray and plaintiff are similarly situated in all relevant aspects such as to show disparate treatment by the Postal Service.

Because the evidence supplied by plaintiff regarding employees Lawson and Gray is insufficient to show a retaliatory motive for plaintiff's discharge, the only evidence left is the plaintiff's prima facie case and the Postal Service's legitimate, nondiscriminatory reason for her termination. While the Court is cautioned that summary judgment is to be granted sparingly once a plaintiff has presented a prima facie case of retaliation, *see Singfield*, 389 F.3d at 564, it is clear that plaintiff must present some evidence beyond the prima facie case to survive defendant's motion. After carefully considering the entire record, the Court concludes that plaintiff cannot do so. There is simply no evidence that plaintiff was terminated for any reason other than her failure to appear for work for 50 days. Indeed, as

13

defendant suggests, it is difficult to imagine any job where an employee's unapproved absence for 50 days would not result in discharge. Defendant is entitled to summary judgment on this claim.

**III.     Conclusion**

For all the reasons set forth herein, defendant's motion for summary judgment [Doc. 49] will be granted and this case will be dismissed with prejudice.

Order accordingly.

s/ Thomas A. Varlan  
UNITED STATES DISTRICT JUDGE